## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ERIC J. BONE**                                    **CIVIL ACTION**

**VERSUS**                                          **NO.  15-6455**

**N. BURL CAIN, WARDEN**                            **SECTION "F"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Eric J. Bone, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On November 19, 2009, Bone and a co-defendant, Shawn A. Flot

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 1.

Jr.,[3] were charged by indictment with second degree murder.[4]  The Louisiana Fifth Circuit

Court of Appeal summarized the facts determined at trial as follows in relevant part:

> The victim, Demetrius Jackson, was shot and killed outside of Cesar's nightclub in the early morning hours of July 25, 2009. Kyron Jackson, the victim's brother and a member of the Calliope Gang, arrived at Cesar's nightclub with a group of friends between 12:30 and 1:00 a.m. on July 25, 2009.  Members of the Gert Town gang, including defendant (aka "Heavy") and co-defendant Shawn Flot, subsequently arrived at the club and confronted the Calliope gang.   Kyron testified that members of the Calliope gang began "fussing" and "throwing money up" at the Gert Town gang members; he further stated that one member of the Calliope gang spit in Shawn's face leading to a "big old confrontation."  Kyron testified that the actions of the Calliope gang prompted Shawn to tell Kyron, "I'm going to kill you when we get out the club."  At some point during this verbal confrontation, an unrelated physical altercation took place among some other patrons of the club and the Gert Town and Calliope members left the club.  Kyron testified that while he, the victim, and another Calliope gang member known as "Stink" began walking to their car, a vehicle driven by defendant and occupied by other Gert Town members pulled up on the roadway and stopped.  Kyron testified that co-defendant Shawn Flot exited the vehicle and began shooting; Kyron ran back toward the club but noticed that defendant's car circled the block to apparently see if anyone was shot before fleeing the scene.  Kyron followed the ambulance to the hospital to see his brother but did not provide any information to investigating authorities that night.

State v. Bone, 107 So.3d 49, 53 (La. App. 5th Cir. 2012); State Record Volume 3 of 14,

Louisiana Fifth Circuit Opinion, 12-KA-34, page 3, September 11, 2012.

---

[3]Flot's name was spelled with one "t" in the indictment and also is spelled "Flott" in other portions of the state court record.

[4]St. Rec. Vol. 1 of 14, Indictment, 11/19/09; Grand Jury Return, 11/19/09 (amended 11/20/09). The indictment was amended on February 3, 2012, reducing the charge against Flot to manslaughter. St. Rec. Vol. 1 of 14, Indictment, handwritten notation dated 2/3/12.

Bone was tried separately before a jury on May 10 through 13, 2011, and found guilty as charged of second degree murder.[5]   On May 19, 2011, the state trial court sentenced Bone to life in prison without benefit of parole, probation or suspension of sentence.[6]

On direct appeal to the Louisiana Fifth Circuit, Bone's appointed counsel asserted two errors:[7] (1) The state trial court erred by allowing into evidence text messages collected from Bone's cell phone. (2) The evidence was insufficient to support the verdict. Bone filed a pro se supplemental brief requesting that the court conduct an errors patent review to determine the sufficiency of the indictment.[8]  The court affirmed the conviction on September 11, 2012, finding no merit in the claims and no errors patent on the record.[9]

The Louisiana Supreme Court denied Bone's related writ application on April 1, 2013, without stated reasons.[10]  His conviction became final ninety (90) days later, on

---

[5]St. Rec. Vol. 2 of 14, Trial Minutes, 5/10/11; Trial Minutes, 5/11/11; Trial Minutes, 5/12/11; Trial Minutes, 5/13/11; St. Rec. Vol. 9 of 14, Trial Transcript, 5/10/11; Trial Transcript, 5/11/11; St. Rec. Vol. 10 of 14, Trial Transcript (continued), 5/11/11; St. Rec. Vol. 11 of 14, Trial Transcript (continued), 5/11/11; Trial Transcript, 5/12/11; St. Rec. Vol. 12 of 14, Trial Transcript (continued), 5/12/11; Trial Transcript, 5/13/11.

[6]St. Rec. Vol. 2 of 14, Sentencing Minutes, 5/19/11; St. Rec. Vol. 12 of 14, Sentencing Transcript, 5/19/11.

[7]St. Rec. Vol. 12 of 14, Appeal Brief, 12-KA-0034, 2/8/12.

[8]St. Rec. Vol. 12 of 14, Pro Se Appeal Brief, 12-KA-0034, 3/7/12.

[9]Bone, 107 So.3d at 49; St. Rec. Vol. 3 of 14, 5th Circuit Opinion, 12-KA-34, 9/11/12.

[10]State v. Bone, 110 So.3d 574 (La. 2013); St. Rec. Vol. 3 of 14, La. S. Ct. Order, 2012-KO-2229, 4/1/13; St. Rec. Vol. 14 of 14, La. S. Ct. Writ Application, 12-KO-2229, 10/12/12 (dated 10/9/12).

Monday, July 1, 2013,[11] when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On November 8, 2013, Bone signed and submitted an application for post-conviction relief to the state trial court asserting two grounds for relief:[12] (1) His counsel was ineffective when he failed to object to the identification evidence at trial. (2) He was denied a fair trial due to prosecutorial misconduct when the State presented perjured testimony from Kyron Jackson to the grand jury.

After receiving a response from the State,[13] the state trial court denied the application, finding no merit in the first claim and the second claim procedurally barred under La. Code Crim. P. art. 930.4, because is was not raised on appeal, and alternatively was without merit.[14]

---

[11]The period ended on Sunday, June 30, 2013, leaving the last day to fall to the next business day, Monday, July 1, 2013.  Fed. R. Civ. P. 6(a)(1)(C); La. Code Crim. P. art. 13.

[12]St. Rec. Vol. 3 of 14, Application for Post-Conviction Relief, 11/15/13 (dated 11/8/13).

[13]St. Rec. Vol. 3 of 14, Trial Court Order, 1/13/14; State's Response, 2/12/14.

[14]St. Rec. Vol. 3 of 14, Trial Court Order, 5/21/14.

4

The Louisiana Fifth Circuit denied Bone's writ application on July 9, 2014, finding no error in the trial court's ruling that the claims lacked merit.[15]  The Louisiana Supreme Court denied Bone's related writ application without stated reasons on July 31, 2015.[16]

## II.   FEDERAL HABEAS PETITION

On December 3, 2015, the clerk of this court filed Bone's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[17] (1) The evidence was insufficient to support the conviction. (2) He was denied effective assistance of counsel when his counsel failed to make a contemporaneous objection to identification testimony at trial. (3) He was denied a fair trial because perjured testimony was presented to the grand jury. (4) The trial court erred by denying his motion to suppress text messages collected from petitioner's cell phone and later introduced at trial.

The State filed a response in opposition to Bone's petition in which it concedes that the petition was timely filed.[18]  The State also asserts that Bone exhausted state court review, except as to part of the fourth claim, which nevertheless is a Fourth Amendment

---

[15]St. Rec. Vol. 3 of 14, 5th Cir. Order, 14-KH-457, 7/9/14; St. Rec. Vol. 13 of 14, 5th Cir. Writ Application, 14-KH-457, 6/23/14 (dated 6/17/14).

[16]State ex rel. Bone v. State, 174 So.3d 1143 (La. 2015); St. Rec. Vol. 14 of 14, La. S. Ct. Order, 2014-KH-1698, 7/31/15; La. S. Ct. Writ Application, 14-KH-1698, 8/8/14 (dated 8/4/14).

[17]Rec. Doc. No. 1., pp. 5-8, 25-26.

[18]Rec. Doc. No. 7.

claim barred from federal review under <u>Stone v. Powell</u>, 428 U.S. 465 (1976). The State also argues that Bone has failed to establish that he is entitled to federal habeas relief.

In his reply to the State's opposition, Bone reasserts his entitlement to relief on claims one through three and argues that the <u>Stone v. Powell</u> bar does not apply in his case. He argues that the state appellate court erroneously applied the harmless error doctrine after finding that the trial court erred in denying the motion to suppress the text messages.[19] This error, he argues, requires federal review of his claim as an exception to <u>Stone v. Powell</u>.

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[20] and applies to habeas petitions filed after that date. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to

---

[19]Rec. Doc. No. 8.

[20]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

Bone's petition, which, for reasons discussed below, is deemed filed in a federal court on November 30, 2015.[21]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that Bone's petition was timely filed. The State also contends that Bone has not exhausted state court remedies on part of his fourth issue, challenging the trial court's admission of the text message, but nevertheless asserts that Bone's fourth claim is barred from federal review and the remaining claims are meritless. Even if the arguments under claim four were not fully exhausted, that failure to exhaust does not prevent the court from addressing Bone's claims, which I find to be without merit. 28 U.S.C. § 2254(b)(2).

---

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The official stamp from the prison's Legal Programs Department reflects that Bone delivered the petition and accompanying documents to prison officials on November 30, 2015, the same day the documents were emailed to the clerk of court for filing. Rec. Doc. No. 1-2, p. 113.

IV.    STANDARDS OF A MERITS REVIEW

        28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions

of fact, questions of law and mixed questions of fact and law in federal habeas corpus

proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

        Determinations of questions of fact by the state court are "presumed to be correct

. . . and we will give deference to the state court's decision unless it 'was based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28

U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also

codifies the "presumption of correctness" that attaches to state court findings of fact and

the "clear and convincing evidence" burden placed on a petitioner who attempts to

overcome that presumption.  28 U.S.C. § 2254(e)(1).

        A state court's determination of questions of law and mixed questions of law and

fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state

court's decision "'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

8

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001);  Hill, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted)  White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington, 562 U.S. at 103, and Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685,

9

699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.    SUFFICIENCY OF THE EVIDENCE

Bone asserts that the evidence was insufficient to prove that he, as the driver of the car, was guilty as a principal to second degree murder. He points to inconsistent testimony from Kyron Jackson, whom he claims actually shot the victim in the back, the assumptions made by the detectives, and other inconsistent evidence about the shooting to establish that reasonable doubt as to his guilt existed.

Bone presented this claim to the Louisiana Fifth Circuit on direct appeal. The court considered the claim under the standards set forth in Jackson v. Virginia, 443 U.S. 307 (1979), and related state case law, and found that the evidence established that the victim was shot by the passenger in the car driven by Bone, which was sufficient to establish that Bone was a principal to the murder. The evidence also showed that Bone facilitated the murder by idling the car in place while the shots were fired and driving back to the scene to assure that someone was shot. The appellate court also found that the physical

10

evidence belied Bone's contention that there was a shoot-out during which Kyron Jackson shot his brother in the back. The court relied on the testimony and ballistics evidence, which showed that all of the casings found at the scene were from one gun, indicating that no shoot-out occurred, and that the gun was fired by Shawn Flot, who was a passenger in Bone's car. The court also discussed the video evidence showing Kyron Jackson at the bar making a clear pass through a metal detector with no weapons detected just before the shooting. Based on the evidence as a whole,[22] the court find sufficient evidence to support the verdict. This was the last reasoned opinion by a state court on this issue. See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion.).

Under Jackson, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Jackson, 443 U.S. at 319; Williams v. Cain, 408 F. App'x 817, 821 (5th Cir. 2011); Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008). Thus, to determine whether the commission of a crime is adequately supported by

---

[22]The court did not consider the text messages obtained without a probable cause showing or the related statements and testimony in resolving the sufficiency of the evidence. Bone, 107 So.3d at 60 n.9; St. Rec. Vol. 3 of 14, 5th Cir. Opinion, 12-KA-34, p. 15, n.9, 9/11/12.

the record, the court must review the substantive elements of the crime as defined by state law.  Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n. 16).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  See McDaniel v. Brown, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 F. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial") (quoting Jackson, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.  United States v. Young, 107 F. App'x 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993)); see Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  All credibility choices and conflicting inferences must be resolved in favor of the verdict.  Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.  Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985).  In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational

decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. Perez, 529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.[23]

Bone was charged with and convicted as a principal to the second degree murder of Demetrius Jackson. A person is considered to be a "principal" to a crime when he is "concerned in the commission of a crime, whether present or absent and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." La. Rev. Stat. § 14:24; State v. Tate, 851 So.2d 921, 930 (La. 2003) (citing State v. Brooks, 505 So.2d 714, 717 (La. 1987)).

---

[23]As argued by Bone, Louisiana law allows for a crime to be proven by both direct and circumstantial evidence. "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. § 15:438. However, on federal habeas corpus review, the court does not apply this state law "reasonable hypothesis" standard, and instead must apply Jackson. See Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992) (citing Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test. . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." State v. Porretto, 468 So.2d 1142, 1146 (La. 1985); accord State v. Williams, 693 So.2d 204, 208 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." State v. Maxie, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); accord State v. Williams, 693 So.2d at 208. The appropriate standard for this court remains Jackson as applied under the parameters of the AEDPA.

Louisiana law defines the crime of second degree murder as "the killing of a human being . . . when the offender has a specific intent to kill or to inflict great bodily harm."[24] La. Rev. Stat. § 14:30.1(A)(1).  "Specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act."  La. Rev. Stat. § 14:10(1).

Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions.  State v. Sharlhorne, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989); State v. Tate, 851 So.2d at 930 (citing State v. Brooks, 505 So.2d at 717).  Specific intent to kill can also be implied by the intentional use of a deadly weapon, such as a knife or gun.  State v. Collins, 43 So.3d 244, 251 (La. App. 1st Cir. 2010) (citing State v. Brunet, 674 So.2d 344, 349 (1996)).

The evidence at trial established that several members of the rival Gert Town and Calliope gangs encountered each other at Cesar's Bar around 1:50 a.m. on the morning of the shooting, July 25, 2009.[25]  Among those opposing gang members were Bone and Shawn Flot from Gert Town and the victim, Demetrius Jackson and his brother Kyron

---

[24]This was the definition used to charge Bone's jury.  St. Rec. Vol. 2 of 14, Jury Charges, p. 8, 5/13/11.

[25]St. Rec. Vol. 9 of 14, Trial Transcript, pp. 23, 29, 31-32 (Kyron Jackson), 5/11/11.

Jackson, from Calliope.[26]  Arguments ensued and death threats were passed between members of the gangs during the mostly verbal confrontation inside the bar.[27]

At some point, an unrelated physical altercation occurred in the bar prompting members from each gang to leave the bar shortly after 2:00 a.m.[28] The members from Calliope stayed near the door of the club to assure that the Gert Town members left.[29] As the victim and other Calliope members walked to their cars, a car driven by Bone and occupied by other Gert Town members, including Flot, pulled up next to them and stopped.[30] Flot exited the vehicle and began shooting at Demetrius Jackson, who was closest to the car door from which he exited.[31] Jackson suffered multiple gunshot wounds, including superficial wounds to the right temple and right middle finger with two fatal wounds to the his right back, both of which exited the right upper chest after passing

---

[26]St. Rec. Vol. 9 of 14, Trial Transcript, pp. 23-29 (Kyron Jackson), 5/11/11.

[27]St. Rec. Vol. 9 of 14, Trial Transcript, pp. 30, 32 (Kyron Jackson), 5/11/11.

[28]St. Rec. Vol. 9 of 14, Trial Transcript, pp. 30, 32-33, 34 (Kyron Jackson), 5/11/11.

[29]St. Rec. Vol. 9 of 14, Trial Transcript, p. 33 (Kyron Jackson), 5/11/11.

[30]St. Rec. Vol. 9 of 14, Trial Transcript, pp. 38, 39 (Kyron Jackson), 5/11/11.

[31]St. Rec. Vol. 9 of 14, Trial Transcript, p. 38 (Kyron Jackson), 5/11/11.

through the right lung.[32]  Eight bullet casings were retrieved from the scene and they were all fired from one gun consistent with the 40 mm gun later found in Flot's possession.[33]

During the shooting, Bone kept the car in place and no one else exited the vehicle.[34] Bone drove off after Flot got back in the car, and quickly drove back past the scene, apparently to see if anyone had been shot.[35]  Eventually, patrol officers spotted Bone's car and pursued it until the lead officer lost sight of the vehicle over the Crescent City Connection.[36]  The pursuit was eventually halted near I-10 and Claiborne Avenue. The officers used the license plate number to locate the registered owner of the car, who was Bone's sister Erica, who led them to Bone's mother, with whom he lived.[37]  The officers later found Bone's car, which had been burned.[38]

---

[32]St. Rec. Vol. 10 of 14, Trial Transcript (continued), pp. 129, 131, 133-135 (Dr. Fraser Mackenzie, Coroner), 5/11/11.

[33]St. Rec. Vol. 11 of 14, Trial Transcript, p. 35 (Firearms Expert Jene Rauch), 5/12/11; St. Rec. Vol. 12 of 14, Trial Transcript, pp. 99 (Bone), 5/13/11.

[34]St. Rec. Vol. 9 of 14, Trial Transcript, p. 40 (Kyron Jackson), 5/11/11.

[35]St. Rec. Vol. 9 of 14, Trial Transcript, p. 41 (Kyron Jackson), 5/11/11.

[36]St. Rec. Vol. 10 of 14, Trial Transcript (continued), p. 176-77 (Officer Savage), 5/11/11.

[37]St. Rec. Vol. 10 of 14, Trial Transcript (continued), pp. 216-17 (Officer Gibbs), 5/11/11.

[38]St. Rec. Vol. 10 of 14, Trial Transcript (continued), pp. 218-19 (Officer Gibbs), 5/11/11.

The jury also heard Bone testify that Kyron Jackson and other members of the Calliope gang had guns in their waistbands inside the bar.[39]  Bone described the incident as a shoot-out started by Kyron Jackson and said the shots were fired by a rear seat passenger in his car, although he denied that Flot was the shooter.[40]  The jury also saw the security videos of Kyron and the Calliope members going through a metal detector and being searched before they entered the bar, where no weapons were found on them.[41]  The jury also heard Bone testify that he fled the scene to protect the shooter from the police.[42]

Thus, the jury heard evidence sufficient to conclude that Flot, a passenger in Bone's car, shot and killed Demetrius Jackson.  Bone drove the car to the location of the shooting where he kept it in place, motionless during the shooting.  Bone drove away and quickly drove back to view the scene of the shooting before fleeing.  Bone then led the police on a high speed chase before escaping their view and later burning the car.

A rational trier of fact, after viewing this evidence in the light most favorable to the prosecution, could easily find beyond a reasonable doubt that Bone was a principal to second degree murder.  The evidence showed, and Bone does not dispute, that Flot acted with specific intent to kill or cause great bodily harm when he shot Jackson multiple

---

[39]St. Rec. Vol. 12 of 14, Trial Transcript, pp. 18-19 (Bone), 5/13/11.

[40]St. Rec. Vol. 12 of 14, Trial Transcript, p. 20 (Bone), 5/13/11.

[41]St. Rec. Vol. 12 of 14, Trial Transcript, pp. 55-56 (Bone), 5/13/11.

[42]St. Rec. Vol. 12 of 14, Trial Transcript, pp. 38-39 (Bone), 5/13/11.

times.  The evidence also showed that Bone drove Flot to the scene, waited for him as he shot Jackson, drove Flot away from the scene and drove the car to evade police in a high speed chase.  Bone's involvement satisfies the definition of principal because he was present and involved in the commission of a crime and aided and abetted in its commission.

The jury acted well within its authority as factfinder to make credibility determinations to believe the State's evidence and disregard Bone's testimony that there was a shoot-out between his passengers and Kyron Jackson and that Kyron Jackson shot his brother Demetrius in the back.  The State's evidence also tended to show that Kyron Jackson and the other Calliope gang members were not carrying weapons, and that the bullets and casings were consistent with the weapon found in Flot's possession.  The jury simply did not believe the defense theories and arguments in reaching its guilty verdict, which is properly supported by the evidence.  It is not for this court on federal habeas review to reevaluate witness credibility and evidence or substitute its judgment for that of the jury, as Bone now asks the court to do.

The state courts' rejection of Bone's insufficient evidence claim was not contrary to or an unreasonable application of Supreme Court law.  He is not entitled to relief on this claim.

18

VI.     EFFECTIVE ASSISTANCE OF COUNSEL

Bone asserts that his counsel failed to provide effective assistance when he did not make a contemporaneous objection to the identification testimony of Kyron Jackson. Bone argues that Jackson made prior statements that Bone did not kill his brother. Later, Bone clarifies his argument to assert that the identification by Jackson was unreliable under Manson v. Brathwaite, 432 U.S. 98 (1977), should not have been admitted at trial and called for an objection from counsel to preserve the reliability issue.

The state court record reflects that Bone's counsel filed a pretrial motion to suppress the identification evidence, which would have included that made by Kyron Jackson.[43]  This motion and others were heard on June 17, 2010, at which time the State and Bone's counsel questioned Deputy Ashton Gibbs about the possible suggestiveness of the picture line-up and presentation of the line-up to Jackson.[44]  After hearing the testimony, the argument of counsel and viewing the photographic array, the state trial court denied the motion, finding no constitutional violation in connection with the array or its presentation to Jackson.[45]

When Bone asserted this claim suggesting unreliability of the identification on post-conviction review, the state trial court denied relief under the standards of Strickland

---

[43]St. Rec. Vol. 1 of 14, Motion to Suppress Identification, 12/2/09.

[44]St. Rec. Vol. 1 of 14, Minute Entry, 6/17/10; St. Rec. Vol. 9 of 14, Hearing Transcript, pp. 15-16, 19-21, 6/17/10.

[45]St. Rec. Vol. 9 of 14, Hearing Transcript, p. 25, 6/17/10.

v. Washington, 466 U.S. 668 (1984), and related state case law because Jackson had consistently identified Bone as the driver of the car involved in the shooting and Bone admitted at trial that he was the driver. Thus, the court found no likelihood of misidentification and no basis for counsel to have objected.

On review of that ruling, the Louisiana Fifth Circuit also concluded that Jackson failed to meet either prong of the Strickland test for the same reasons identified by the trial court. This was the last reasoned opinion on the issue where the Louisiana Supreme Court denied relief without comment.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox, 609 F.3d at 789. Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland, 466 U.S. at 668, relied on by the state courts, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

20

proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington v. Richter, 562 U.S. 86, 112 (2011) (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105. The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under

21

§ 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u>, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 190 (2011) (quoting <u>Knowles</u>, 556 U.S. at 123).  This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."  <u>Strickland</u>, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.  <u>Id</u>., 466 U.S. at 689; <u>Geiger v. Cain</u>, 540 F.3d 303, 309 (5th Cir. 2008); <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  <u>Strickland</u>, 466 U.S. at 689; <u>Neal</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227 F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001).  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  <u>Lamb v. Johnson</u>, 179 F.3d 352, 358 (5th Cir. 1999), <u>cert. denied</u>, 528 U.S. 1013 (1999) (citing <u>Rector v. Johnson</u>, 120 F.3d 551, 564 (5th Cir. 1997) and <u>Mann v. Scott</u>, 41 F.3d 968, 983-84 (5th Cir. 1994)).

Bone argues that his counsel should have objected at trial to Jackson's identification testimony because it was unreliable under Manson, 432 U.S. at 98. In Manson, the United States Supreme Court outlined several factors that may be considered when reviewing the reliability of a witness's identification: (1) the opportunity of the witness to view the subject; (2) the witness's degree of attention; (3) the accuracy of the description; (4) the witness's level of certainty; (5) the elapsed time between the crime and the identification; and (6) the corrupting influence of the suggestive identification itself. Manson, 432 U.S. at 114-16; Passman v. Blackburn, 652 F.2d 559, 570-71 (5th Cir. 1981); Herrera v. Collins, 904 F.2d 944, 946 (5th Cir. 1990).

In this case, the only challenge made to the identification was through the pretrial motion to suppress based on the alleged suggestiveness of the officer's photographic array, a claim that was not pursued after the pretrial motion was denied. As Bone concedes, there was no direct challenge made by him or his counsel to the reliability of Jackson's identification. Nevertheless, when considering the ineffective assistance of counsel claim on post-conviction, the state courts held that Jackson made no inconsistent identifications of Bone and instead consistently identified Bone as the driver of the car. The record supports the state courts' conclusion that counsel had no basis to object to the reliability of Jackson's testimony.

The record shows that a few days after the shooting, Kyron Jackson first told police that his brother was shot by a person named Darrin, who was in Bone's car, and he denied

23

that Flot or Bone shot his brother.[46]  Jackson expressed no doubt when identifying Bone and his car either before or during trial.  Bone repeatedly admitted at trial that Kyron Jackson knew him and knew his car on sight.

Contrary to Bone's arguments, Kyron Jackson never identified Bone as the shooter. He instead consistently identified Bone as the person driving the car when his brother was shot by someone else.[47]  Bone himself later testified that he in fact was driving the car the night of the shooting.  Jackson only changed his identification of the actual shooter from Darrin to Flot and was otherwise consistent about Bone.  He also identified Bone without hesitation in the courtroom and in the multitude of surveillance pictures entered into evidence from the night of the shooting.

Thus, even under Manson, there was no basis for counsel to object to or challenge the reliability of Jackson's testimony identifying Bone as the driver of the car on the night of the shooting.  Counsel is not ineffective in failing to enter a baseless objection.  See Clark v. Thaler, 673 F.3d at 429 ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance"); Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite'") (quoting Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994)); Green v.

---

[46]St. Rec. Vol. 9 of 14, Trial Transcript, p. 48 (Kyron Jackson), 5/11/11.

[47]St. Rec. Vol. 9 of 14, Trial Transcript, pp. 48, 50 (Kyron Jackson), 5/11/11.

Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).

Bone has not established that his counsel's actions were deficient or prejudicial under Strickland. The state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court law. He is not entitled to relief on this issue.

VII.   PERJURED TESTIMONY BEFORE THE GRAND JURY

Bone alleges that his conviction was obtained through the State's presentation of perjured testimony to the grand jury to obtain an indictment. He argues that the prosecutor had Kyron Jackson testify before the grand jury and those statements contained false information, known by the State through Jackson's inconsistent statements. He further asserts that the State had a duty to report the perjured testimony to the state trial court and the grand jury and refrain later from relying on Jackson's false testimony at trial.

Bone first raised these arguments on post-conviction review, and the state trial court found the claim to be in procedural default under La. Code Crim. P. art. 930.4. Alternatively, the court held that the claim had no merit based on the State's representation that Jackson did not testify before the grand jury.

The Louisiana Fifth Circuit approved of the denial of relief on the merits based on the State's representation that Jackson did not testify before the grand jury, and because

Bone's claim in that regard was speculative and conclusory.  This was the last reasoned opinion on the issue.[48]

I construe Bone's claim broadly to have two facets.  First, the State allegedly presented Jackson's false and perjured testimony to the grand jury.  Second, the State presented Jackson's false testimony at trial.

As to the grand jury argument, Bone's claim was denied by the state courts on a factual finding that is entitled to deference in this court.  The trial and appellate courts held that Kyron Jackson did not testify before the grand jury when Bone was indicted.  There could be no perjury where there was no testimony.  Bone has offered no evidence to refute that finding.  Therefore, the State did not present testimony, much less knowingly present perjured testimony, from Jackson to the grand jury.

Even if Jackson had testified, Bone has not established a basis for relief.  It is well settled that the Fourteenth Amendment does not impose the requirement of grand jury indictment upon the states.  Hurtado v. California, 110 U.S. 516, 538 (1884); see also, Apprendi v. New Jersey, 530 U.S. 466, 477 n.3 & 500 (2000).  The Supreme Court has not addressed whether a state indictment is constitutionally defective if perjured testimony was presented to the grand jury or whether any defect or misconduct in the grand jury

---

[48]Because the last reasoned opinion addressed only the denial of relief on the merits of the claim, the procedural default ruling by the lower state court is not controlling and also is not a defense asserted here by the State.  For these reasons, I do not further address Bone's discussion of the procedural bar in his memorandum and traverse.

proceeding would amount to a federal constitutional violation.  <u>Bonner v. Quarterman</u>, No. 07-CV-1598, 2008 WL 1867140, at *2 n.7 (N.D. Tex. Apr. 21, 2008) (recognizing that the Supreme Court has not addressed the constitutional impact of perjury on a state indictment).  Thus, I therefore cannot find that denial of relief on this issue was contrary to or an unreasonable application of clearly established Supreme Court law.  <u>Magee v. Butler</u>, No. N-91135, 2015 WL 5951877, at *8 (N.D. Ill. Oct. 13, 2015) (denying relief because the state court action was not contrary to or an unreasonable application where "there is no clearly established Supreme Court law saying that a prosecutor's knowing presentation of perjured testimony before a grand jury violates a criminal defendant's constitutional rights.")

Nevertheless, applying other guidance, Bone's claim still would not entitle him to relief.  In a federal prosecution, where there is a constitutional right to a grand jury indictment, the ultimate conviction of the crime by a petit jury renders harmless any defect in the grand jury proceeding, including introduction of perjured testimony.  <u>See United States v. Mechanik</u>, 475 U.S. 66, 71 (1986) (finding that error in grand jury proceeding rendered harmless after petit jury returned guilty verdict, which confirmed existence of probable cause to indict); <u>accord</u> <u>United States v. McKenzie</u>, 678 F.2d 629 (5th Cir. 1982) (Even in a case of the most egregious prosecutorial misconduct, an indictment is not to be dismissed without actual prejudice because there are adequate safeguards during the trial to protect against his conviction by a petit jury); <u>McLaughlin</u>

27

v. Cain, No. 08-78, 2009 WL 891820, at *12-13 (M.D. La. Apr. 1, 2009) (Order adopting report and recommendation) (relying on Mechanik and related state law to deny habeas relief on a claim that the prosecutor used perjured testimony before the grand jury).  There is no question that Bone was convicted by a jury after trial, which overrides any alleged error in the grand jury process.

To whatever extent Bone contends that the State should not have continued to rely on Jackson's inconsistent testimony at trial, he also has failed to establish constitutional error that would entitle him to habeas relief.  A State denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  Giglio v. United States, 405 U.S. 150, 766 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996).  To obtain relief, the defendant must show that (1) the testimony was actually false, (2) the State knew it was false, and (3) the testimony was material.  Duncan v. Cockrell, 2003 WL 21545926, at *3 (5th Cir. July 3, 2003); Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993).  False testimony is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict.  Duncan, 2003 WL 21545926, at *3 (citing Nobles, 127 F.3d at 415).

A claim of prosecutorial misconduct, including use of perjured testimony, presents a mixed question of law and fact.  Brazley v. Cain, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing United States v. Emueqbunam, 268 F.3d 377,

403-04 (6th Cir. 2001); <u>Jones v. Gibson</u>, 206 F.3d 946, 958 (10th Cir. 2000); <u>United States v. Noriega</u>, 117 F.3d 1206, 1218 (11th Cir. 1997); <u>United States v. Spillone</u>, 879 F.2d 514, 520 (9th Cir. 1989)).  This court must determine whether the state courts' rulings were contrary to or an unreasonable application of federal law.  To the extent this claim was not directly addressed by the state courts, it also is without merit under the applicable de novo standards of review.[49]

In this case, the State called Kyron Jackson to testify at trial regarding his identification of Bone as the driver of the car from which Flot exited to shoot Demetrius Jackson.  During Jackson's direct testimony, the State questioned him about his initial refusal to speak with police and his changed testimony regarding the identity of the shooter.  The questions went into to detail about his early identification of another man, Darrin, as the shooter and his reasons for changing that identification to Flot.  The testimony was also clear, however, that Jackson never altered his identification of Bone as the driver of the car that night.  Defense counsel explored all of these issues in detail during cross-examination of Jackson.

---

[49]The AEDPA's deferential standard of review under Section 2254(d) and <u>Williams</u>, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d). The state court orders in this case do not appear to address Bone's perjury claim as it may be read to extend to Jackson's testimony at trial.  With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply. <u>Cullen</u>, 563 U.S. at 185-86; <u>Henderson v. Cockrell</u>, 333 F.3d 592, 597 (5th Cir. 2003).  Instead, the federal courts review those claims under pre-AEDPA de novo standards of review.  <u>Id</u>. at 598 (citing <u>Jones v. Jones</u>, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); <u>Carty v. Thaler</u>, 583 F.3d 244, 253 (5th Cir. 2009).  Even under this standard, Bone's claim does not entitle him to relief.

While Jackson's testimony was material to the State's case, Bone has not shown that any portion of Jackson's trial testimony was false or perjured.  In light of the detailed questioning by the prosecutor into the multiple statements made, there is no showing that the prosecutor knowingly or otherwise intended to promote false or perjured testimony. On the contrary, the prosecutor placed all of the inconsistent testimony before the jury. The fact that Jackson's testimony was inconsistent with prior statements does not establish that it was false or that the prosecution knew or believed that testimony to be false.  See Kutzner v. Cockrell, 303 F.3d 333, 337 (5th Cir. 2002); Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990) (holding that conflicting testimony does not prove perjury but instead establishes a credibility question for the jury).

Bone has failed to establish that the State violated his constitutional rights through the presentation of any false testimony from Jackson, either to the grand jury or at trial. The denial of relief on these issues was neither contrary to nor an unreasonable application of clearly established Supreme Court law or otherwise a direct violation of federal law prohibiting the knowing presentation of perjured testimony at trial.  Bone is not entitled to federal habeas relief on this claim.

VIII.   ADMISSIBILITY OF THE TEXT MESSAGES

Bone alleges that the state trial court erred in denying his request to suppress text messages seized from his cell phone carrier because there was no probable cause affidavit

30

to support the subpoenas used to obtain them.[50]  Construed broadly, his arguments contend that this federal court is not prohibited from reviewing the merits of this claim because, after finding that the warrant was issued without probable cause in violation of the Fourth Amendment, the state appellate court erroneously applied the harmless error rule to affirm the admissibility of the text messages evidence at trial.  Bone also asserts that the state appellate court's finding of a Fourth Amendment violation exempts him from the bar under Stone v. Powell, 428 U.S. at 465.  He argues that the state court's ruling was an unreasonable application of federal law, the error was not harmless, and he is entitled to review of his claim and relief from his conviction.

The record reflects that Bone's counsel filed a motion to suppress the transcriptions of the text messages obtained by the State through subpoena duces tecum from Sprint without a probable cause affidavit, which violated state law and his privacy rights under the Fourth Amendment.[51]  The state trial court heard argument on September 13, 2010.[52]

---

[50]The text messages retrieved from Bone's phone from conversations timed after the shooting made reference to the car fire and to "Little D," which was Demetrius Jackson's nickname.  St. Rec. Vol. 10 of 14, Trial Transcript (continued), p. 225 (Officer Gibbs), 5/11/11; St. Rec. Vol. 9 of 14, Trial Transcript, p. 23 (Kyron Jackson), 5/11/11.

[51]St. Rec. Vol. 1 of 14, Memorandum, 8/23/10. There are several motions and orders for subpoenas duces tecum to Sprint and a copy of the subpoena at issue is attached to the State's Opposition. St. Rec. Vol. 1 of 14, State's Opposition, 9/2/10.

[52]St. Rec. Vol. 1 of 14, Minute Entry, 9/13/10; State's Opposition, 9/2/10.

After the hearing, the court denied the motion to suppress on September 15, 2010.[53]  The court held that Bone failed to prove that he was the owner of the phone or the actual Sprint customer with standing to challenge the subpoena, and even if he had standing under Louisiana law, he did not have a reasonable expectation of privacy with respect to the content of the text messages.

The Louisiana Fifth Circuit denied Bone's related writ application, finding no error in the state trial court's ruling and that Bone had an adequate remedy on appeal.[54]  The court also denied his request for reconsideration on December 14, 2010.[55]  The Louisiana Supreme Court denied Bone's subsequent writ application as untimely.[56]

Bone's appointed counsel asserted the issue again on direct appeal to the Louisiana Fifth Circuit.  The appellate court held that the state trial court erred in denying the motion to suppress as to the content of the text messages and in finding that Bone did not have a reasonable expectation of privacy in the content of the text messages.  The appellate court found that the issuance of the subpoena constituted a search under the Fourth Amendment, which required a probable cause showing and, as a matter of first

---

[53]St. Rec. Vol. 1 of 14, Reasons for Order, 9/15/10; Trial Court Order, 9/15/10.

[54]St. Rec. Vol. 2 of 14, 5th Cir. Order, 10-K-843, 11/10/10; St. Rec. Vol. 13 of 14, 5th Cir. Writ Application, 10-K-843, 10/4/10.

[55]St. Rec. Vol. 13 of 14, Application for Reconsideration, 10-K-843, 11/19/10; St. Rec. Vol. 14 of 14, 5th Cir. Notice, 10-K-843, 12/14/10.

[56]State v. Bone, 56 So.3d 978 (La. 2011); St. Rec. Vol. 14 of 14, La. S. Ct. Order, 2011-KK-0127, 2/2/11; La. S. Ct. Writ Application, 11-KK-127, 1/14/11.

impression, Bone had an expectation of privacy in the content of the text messages under federal and Louisiana law.  The court also held that the State failed to prove that an exception to the warrant/probable cause requirement existed.

Nevertheless, the Louisiana Fifth Circuit held that the trial court's denial of the motion to suppress was harmless error and that the text message evidence was admissible because it was simply corroborative of other competent evidence properly presented at trial.  This was the last reasoned opinion on the issue.

Contrary to Bone's arguments, this federal court's review of his Fourth Amendment claim is limited by the Supreme Court's long-standing prohibition in Stone v. Powell, 428 U.S. at 465.  In Stone, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." (footnotes omitted) Id., at 494.  The "full and fair" hearing contemplated by Stone refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court.  Davis v. Blackburn, 803 F.2d 807, 808 (5th Cir.1986); O'Berry v. Wainwright, 546 F.2d 1204, 1213 (5th Cir. 1977).

The United States Fifth Circuit Court of Appeals has interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity."  Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978); Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002),

cert. denied, 537 U.S. 1196 (2003).  "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes."  Caver, 577 F.2d at 1192.  "[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under Stone."  Williams v. Brown, 609 F.2d 216, 220 (5th Cir. 1980).

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the Stone prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful.  Janecka, 301 F.3d at 320-21.  Even when a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the Stone bar to apply.  Id. at 320.

The United States Fifth Circuit has also held that the Stone bar applies even in the face of error by the state court in deciding the merits of the Fourth Amendment claim. Swicegood v. Alabama, 577 F.2d 1322, 1324-1325 (5th Cir. 1978); Woodard v. Thaler, 702 F. Supp.2d 738, 759-60 (S.D. Tex. 2010) ("Even if the state court improperly applied its own procedural law in refusing to consider Woodard's Fourth Amendment argument," the Stone bar still applied.) (citing Moreno v. Dretke, 450 F.3d 158, 167 (5th Cir. 2006)).

34

Likewise, even when the state courts err in the disposition of the Fourth Amendment claim on procedural grounds, the Stone bar still applies "with equal force." Williams, 609 F.2d at 219-20.

> [I]n the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on the merits, the rationale of Caver dictates that Swicegood's application of Stone despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims.

Williams, 609 F.2d at 220; Janecka, 301 F.3d at 321.  Thus, to obtain post-conviction relief in federal court, a habeas petitioner must plead and prove that the state court process or proceeding was inadequate.  Davis, 803 F.2d at 1372.

Construed broadly, Bone's argument is that his state court process was inadequate because of the state court's application of harmless error analysis to his Fourth Amendment claim.  He suggests that this alleged error allows him to bypass the rule of Stone v. Powell and obtain federal review of the merits his Fourth Amendment claim. However, it has long been settled that a state court's application of the harmless error rule to a Fourth Amendment claim does not preclude application of the bar under Stone v. Powell.  Cole v. Estelle, 548 F.2d 1164, 1165 (1977) (Stone v. Powell bars review of a Fourth Amendment claim even if the harmless error rule was applied by the state court); Gilmore v. Marks, 799 F.2d 51, 55 (3rd Cir. 1986) (same); see also, Williams v. Lazaroff, No. 14cv1653, 2015 WL 9999840, at *9-*10 (N.D. Ohio Dec. 22, 2015) (fact that state

35

courts applied harmless error review does not allow petitioner to "sidestep" the rule of Stone v. Powell); Majors v. Tilton, No. 06cv1126, 2007 WL 925798, at*20 (S.D. Cal. 2007) (Order adopting report and recommendation) (state court's application of harmless error doctrine, even if applied incorrectly, does not entitle petitioner to federal habeas relief per Stone v. Powell).  To obtain federal review and overcome the Stone v. Powell bar, Bone is required to prove that he had no meaningful opportunity for review of his Fourth Amendment claim in the state courts.  He has not met this burden.

Bone does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims.  On the contrary, he recognizes and utilized the many opportunities available for review of such claims in the Louisiana courts, both pretrial and on appeal.  In addition, this court has found that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." Bailey v. Cain, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) (Duval, J.) (order adopting report and recommendation).

Bone took advantage of multiple opportunities to litigate his Fourth Amendment claim related to the text messages.  First, through his counsel, he filed an unsuccessful motion to suppress and was denied relief on his subsequent writ applications seeking review of that ruling.  On direct appeal, the Louisiana Fifth Circuit found that a Fourth Amendment violation had occurred but that denial of the motion to suppress was harmless

36

error based on the substantial other evidence of guilt.  The Louisiana Supreme Court denied his related writ application without stated reasons.

The record therefore establishes that the Louisiana courts provided several opportunities for Bone to assert his Fourth Amendment claim.  Bone simply was not successful in obtaining relief.  Even if the state courts erred in their disposition of the Fourth Amendment claim, the <u>Stone v. Powell</u> bar still applies, because Bone has not shown that Louisiana's processes routinely and systematically applied to prevent adjudication of Fourth Amendment claims.  <u>See</u> <u>Williams</u>, 609 F.2d at 220; <u>Cole</u>, 548 F.2d at 1165.  This court's review of Bone's Fourth Amendment claim is barred by the doctrine under <u>Stone v. Powell</u>.  Bone's claim must be dismissed for this reason.

<u>**RECOMMENDATION**</u>

For the foregoing reasons, it is **RECOMMENDED** that Bone's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United</u>

Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[57]

New Orleans, Louisiana, this ____2nd____ day of June, 2016.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[57]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.